IN THE

TENTH COURT OF APPEALS




 
 
 
 
 
 
 


 



No. 10-07-00224-CR

 

Marcus Raynard Johnson,

                                                                                    Appellant

 v.

 

The State of Texas,

                                                                                    Appellee

 

 



From the 40th District Court

Ellis County, Texas

Trial Court No. 31,679-CR

 



O p i n i o n










 

        Marcus Johnson appeals his
conviction for aggravated robbery.  See Tex. Penal Code Ann. § 29.03(a) (Vernon 2003).  We
affirm.

        I.     Sufficiency of the Evidence.  Johnson’s
first and fourth issues concern the factual sufficiency of the evidence.  

        A.    Standard of
Review.  In Johnson’s fourth issue, he contends, “The standard
of review on factual insufficiency needs further modification.”  (Br. at iii, viii, 47.)  Johnson criticizes the Texas Court of Criminal Appeals’ decision in
Watson v. Texas: 

According to Watson, when attacking the
factual insufficiency of the evidence, an appellant has to show on the record
some objective basis for concluding the great weight and preponderance of the
evidence contradicts the jury’s verdict.  The focus is not on whether
the State met its burden of proving the defendant guilty beyond a reasonable
doubt.  Instead, the focus is on whether the appellant can show he is innocent
by the great weight and preponderance of the evidence.

(Br. at 48 (citing Watson v. State,
204 S.W.3d 404, 417 (Tex. Crim. App. 2006)).)  But Johnson concedes:
“Appellate courts are bound to follow the decisions of the Court of Criminal
Appeals of Texas.  This Court cannot, therefore, grant [Johnson] the relief he
seeks.”  (Br. at 47 (citing Wiley v. State, 112 S.W.3d 173, 175 (Tex.
App.—Fort Worth 2003, pet. ref’d))); see State v. Colyandro, 233 S.W.3d
870, 870-71 (Tex. Crim. App. 2007); Resendez v. State, 50 S.W.3d 84, 86
(Tex. App.—Waco 2001, pet. ref’d).  We agree.  We apply below the standard of
review of the factual sufficiency of the evidence enunciated by the Court of
Criminal Appeals, including in Watson.

        We overrule Johnson’s fourth
issue.

        B.    Evidence of
Identity.  In Johnson’s first issue, he contends that the
evidence identifying Johnson as the robber was factually insufficient.  

        “Evidence may be factually
insufficient if: 1) it is so weak” that the verdict is “clearly wrong and
manifestly unjust or 2) the adverse finding is against the great weight
and preponderance of the available evidence,” “considering conflicting evidence.” 
Berry v. State, 233 S.W.3d 847, 854 (Tex. Crim. App. 2007) (quoting Johnson
v. State, 23 S.W.3d 1, 11 (Tex. Crim. App. 2000) (internal quotation marks
omitted)); see Watson, 204 S.W.3d at 414-15; see Rollerson v. State, 227
S.W.3d 718, 724 (Tex. Crim. App. 2007).  “Such a factual sufficiency review
requires the reviewing court to consider all of the evidence.”  Berry at
854 (citing Marshall v. State, 210 S.W.3d 618, 625 (Tex. Crim. App.
2006), cert. denied, 128 S. Ct. 87 (2007)); accord Clewis v. State, 922
S.W.2d 126, 129 (Tex. Crim. App. 1996).  “[T]he evidence is reviewed in a
neutral light rather than (as in a legal sufficiency review) in the light most
favorable to the verdict.”  Roberts v. State, 220 S.W.3d 521, 524 (Tex.
Crim. App.), cert. denied, 128 S. Ct. 282 (2007); accord Johnson,
23 S.W.3d at 7; Ladd v. State, 3 S.W.3d 547, 557 (Tex. Crim. App.
1999).  The factual-sufficiency standard of review permits the reviewing court
to substitute its judgment for that of the jury only “to a very limited
degree.”  Marshall, 210 S.W.3d at 625 (quoting Watson at
415, 417).  “[F]actual-sufficiency review requires [a] reviewing court to
afford ‘due deference’ to a jury’s determinations.”  Id. (quoting
Johnson at 9).  “A clearly wrong and unjust verdict occurs where the jury’s
finding is manifestly unjust, shocks the conscience, or clearly demonstrates
bias.”  Berry at 854 (citing Sells v. State, 121 S.W.3d 748, 754
(Tex. Crim. App. 2003)); accord Santellan v. State, 939 S.W.2d 155, 164
(Tex. Crim. App. 1997).   A “requirement meant to assure that Texas’
constitutional right to trial by jury remain ‘inviolate[,’ Tex. Const. art. I, § 15,]
requires a direct-appeal court to exercise its factual-sufficiency jurisdiction
with ‘deferential standards of review’ to jury verdicts.”  Roberts v. State,
221 S.W.3d 659, 664 n.7 (Tex. Crim. App. 2007) (quoting Clewis at
135).  “Although an appellate court reviewing factual sufficiency has the
ability to second-guess the jury to a limited degree, the review should still
be deferential, with a high level of skepticism about the jury’s verdict
required before a reversal can occur.”  Roberts, 220 S.W.3d at 524
(citing Watson at 417 & Cain v. State, 958 S.W.2d 404, 407,
410 (Tex. Crim. App. 1997)).  “[I]t is a jury, not a reviewing court, that
accepts or rejects reasonably equal competing theories of” guilt.  See
Goodman v. State, 66 S.W.3d 283, 285 (Tex. Crim. App. 2001); accord
Abbott v. State, 196 S.W.3d 334, 339 (Tex. App.—Waco 2006, pet. ref’d). 
“[A]n appellate court must first be able to say, with some objective basis in
the record, that the great weight and preponderance of the . . .
evidence contradicts the  jury’s verdict before it is justified in” reversing
for factually insufficient evidence.  Watson at 417 (emphasis in orig.).

        “Direct and circumstantial
evidence are treated equally: ‘Circumstantial evidence is as probative as
direct evidence in establishing the guilt of an actor, and circumstantial
evidence alone can be sufficient to establish guilt.’”  Clayton v. State, 235
S.W.3d 772, 778 (Tex. Crim. App. 2007) (citing Hooper v. State, 214
S.W.3d 9, 13 (Tex. Crim. App. 2007)); see King v. State, 29 S.W.3d 556,
565 (Tex. Crim. App. 2000).  “In a circumstantial-evidence case, it is
unnecessary for every fact to point directly and independently to the guilt of
the accused; rather, it is enough if the finding of guilt is warranted by the
cumulative force of all the incriminating evidence.”  Powell v. State, 194
S.W.3d 503, 507 (Tex. Crim. App. 2006); see Castillo v. State, 739
S.W.2d 280, 287 (Tex. Crim. App. 1987).  

        In criminal cases, the
identity of the criminal actor is an “elemental fact.”  Williams v. State, 948
S.W.2d 954, 959 (Tex. App.—Waco 1997, pet. ref’d); accord Page v. State, 88
S.W.3d 755, 763 (Tex. App.—Corpus Christi 2002), rev’d on other grounds, 137
S.W.3d 75 (Tex. Crim. App. 2004); see, e.g., Threadgill v. State, 146
S.W.3d 654, 664 (Tex. Crim. App. 2004); O’Neal v. State, 49 Tex. Crim.
297, 298, 92 S.W. 417, 417 (1906); Kunde v. State, 22 Tex. App. 95, 99,
3 S.W. 325, 331 (1886).  “Evidence as to the identity of a” criminal “may be
proven by direct or circumstantial evidence.”  Oliver v. State, 613
S.W.2d 270, 274 (Tex. Crim. App. 1981) (op. on reh’g) (en banc); accord
Lockwood v. State, 237 S.W.3d 428, 432 (Tex. App.—Waco 2007, no pet.)
(quoting Clark v. State, 47 S.W.3d 211, 214 (Tex. App.—Beaumont 2001, no
pet.)); In re C.D.S., No. 10-07-00226-CV, 2008 Tex. App. LEXIS 706, at
*9 (Tex. App.—Waco Jan. 30, 2008, no pet.) (mem. op.) (juvenile adjudication).  

        The State points primarily to
the following evidence.  Billy Joe Mayo testified that one morning before
daylight, he was awakened by a loud noise.  Without putting on his glasses,
Mayo went to investigate.  Mayo found a stranger in his house.  Mayo generally
described the man by race, height, weight, and clothing, including “[a] scarf
of some type” on his head.  (3 R.R. at 32.)  The stranger put a knife to Mayo’s
throat and demanded valuables.  When Mayo said that he had none, the stranger
ransacked Mayo’s bedroom.  Meanwhile, the stranger found a red bandana and
covered his face with it.  The stranger found and took Mayo’s wallet and
cellular telephone, and some jewelry.  The robber told Mayo to wait twenty
minutes before moving and left on foot.  Mayo waited for about fifteen minutes,
then called the police.  Mayo had not been able to see the robber well enough
to identify him.  Ennis Police Department Officer Sid Lopez testified that he
and other officers arrived at Mayo’s house within two or three minutes of
Mayo’s call.  Officer Lopez saw that Mayo’s door had been kicked in.  Officer
Jason York testified that he also responded.  Officers Lopez and York began
searching the neighborhood on foot.  Officer York saw James Cox in his yard
down the street from Mayo’s house, and asked if Cox had seen anyone matching
the description of the robber.  Cox indicated the duplex across the street. 
Officer York waited there until Detective Sergeant John Erisman and other
officers arrived.  Sgt. Erisman testified that he knocked on the door and
windows for several minutes before Bruente Williams answered and came outside. 
Williams told Sgt. Erisman that only she and Johnson were inside the
apartment.  When Williams started back inside, she found the door locked behind
her.  After several more minutes of knocking and calling, Johnson came to the
door.  Johnson was wearing blue jeans and a light-colored tank top, appeared
hot and sweaty, and did not appear to have been sleeping.  Johnson also had
around his head an indentation of the sort caused by wearing a “do rag.”[1]  (3 R.R. at 109.)  When
officers searched Johnson’s and Williams’s bedroom, they found a do-rag thrown
behind a cabinet, a red bandana and a knife on a table, and a pair of men’s
tennis shoes.  The tread of the tennis shoes appeared consistent with the
footprint left when Mayo’s door was kicked in.  At trial, Cox identified
Johnson as the man he saw, and said that the man had been wearing blue jeans, a
dark T-shirt, and a do-rag.  The State also introduced evidence that after
Johnson was arrested, he called Williams from jail and told her that he had not
known that Cox would be outside, and directed Williams to give police an alibi
statement to the effect that he had been in bed all night, and to get statements
from Mayo and Cox recanting their statements to police.  At trial, Williams
testified that she would not have known if Johnson had gotten out of bed and
left the apartment, since she had been sleeping.  The State argues that Mayo’s
general description of the robber matched Johnson, and that Cox saw Johnson
walking from the direction of Mayo’s house within minutes of the robbery.  When
police officers contacted Johnson, he did not appear to have been sleeping.  In
Johnson’s room, police found instruments of the crime, namely the do-rag,
bandana, knife, and shoes.  Williams’s testimony conceded that she would not
have known if Johnson had left.  Johnson admitted that he was surprised by Cox
and that he was the man Cox saw, but stated that Mayo could not identify him.  

        Johnson points to the
testimony of his witness, James Jones.  Jones testified that he had been
walking in Cox’s neighborhood the morning of the robbery, wearing blue jeans
and a white T-shirt, and that he was of the same race as Johnson and similar in
height and weight.  Johnson argues that Cox saw Jones, not Johnson.  Johnson
also points to what he calls inconsistencies in the evidence.  For example:

·       
Sgt. Erisman testified that he
arrived at Johnson’s apartment by 7:45 a.m.,
but Mayo testified that he did not call police until after 7:35.

·       
Sgt. Erisman testified that a
police officer took Johnson to Mayo’s house to see whether Mayo could identify
Johnson, and Mayo was too frightened to attempt to do so; but Mayo testified
that he did not remember the attempted identification.  

·       
Cox testified that the man he
saw was carrying three bottles of beer, but police officers testified that they
found no beer in Johnson’s apartment.

·       
Mayo testified that the robber
was wearing jewelry or something around his neck, but Cox and police officers
testified that they did not remember Johnson’s wearing anything around his
neck.  

·       
Mayo testified that the knife
the robber put to Mayo’s throat had a serrated edge.  Johnson argues that the
knife found in Johnson’s room is not serrated.[2]

Johnson also
points to what he calls weaknesses in the evidence.  For example:

·       
Johnson argues that Officer
York could not have known what direction to go in searching for the robber
based on Mayo’s report.

·       
Johnson points to testimony
that officers knocked on the door of Johnson’s apartment for twenty minutes
before Williams opened the door as an explanation why Johnson was dressed and
alert when he came to the door.

·       
Johnson points to evidence
that police officers did not find Mayo’s wallet, telephone, or jewelry in
Johnson’s apartment.

·       
Johnson points to Mayo’s
testimony that a bandana left in Mayo’s house may have been the one that the
robber used, and thus not the one found in Johnson’s apartment.

·       
Johnson points to Sgt.
Erisman’s testimony that do-rags are commonplace.

·       
Johnson points to evidence
that he was cooperative with the police officers and did not attempt to flee.

·       
Johnson points to the absence
of certain evidence, such as evidence of Johnson’s shoe size and fingerprint
evidence.

        Viewing the evidence in a
neutral light, and giving due deference to the jury’s determinations of witness
credibility and the weight of the evidence, we hold that the identity evidence
was not so weak that the verdict was clearly wrong and manifestly unjust, and
that the identity finding was not against the great weight and preponderance of
the evidence.  The evidence of identity was factually sufficient.

        We overrule Johnson’s first
issue.

        II.    Admonitions.  In Johnson’s
second issue, he contends that the trial court erred in its admonitions to the
venire panel.  

        Texas
Rule of Appellate Procedure 33.1 generally provides:

       As a prerequisite to presenting a complaint
for appellate review, the record must show that:

       (1)   the complaint was made to the trial
court by a timely request, objection, or motion . . . and

       (2)   the trial court . . . ruled
on the request, objection, or motion . . . .

Tex. R. App.
P. 33.1(a).  “The only essential
requirement to ensure preservation is a specific, timely request that is refused
by the trial court.”  Cruz v. State, 225 S.W.3d 546, 548 (Tex. Crim.
App. 2007); accord Young v. State,  137 S.W.3d 65, 69 (Tex. Crim. App.
2004).  Rule 33.1 is a “’judge-protecting’ rule[] of error preservation.”  Reyna
v. State, 168 S.W.3d 173, 177 (Tex. Crim. App. 2005) (quoting Martinez
v. State, 91 S.W.3d 331, 335 (Tex. Crim. App. 2002)).  “[T]he party
complaining on appeal . . . about a trial court’s” ruling “must, at
the earliest opportunity, have done everything necessary to bring to the
judge’s attention the . . . rule or statute in question and its
precise and proper application to the” matter “in question.”  Id.
(quoting Martinez, 91 S.W.3d at 335-36) (alterations
added).  “Except for complaints involving systemic (or absolute) requirements,
or rights that are waivable only[,] . . . all other complaints,
whether constitutional, statutory, or otherwise, are forfeited by failure to
comply with Rule 33.1(a).”  Neal v. State, 150 S.W.3d 169, 175 (Tex.
Crim. App. 2004) (quoting Mendez v. State, 138 S.W.3d 334, 342 (Tex.
Crim. App. 2004)) (bracketed alteration added); see Cameron v. State, 241
S.W.3d 15, 22 (Tex. Crim. App. 2007); Amador v. State, 221 S.W.3d 666,
671 n.9 (Tex. Crim. App. 2007); Marin v. State, 851 S.W.2d 275, 279-80
(Tex. Crim. App. 1993).

        Johnson failed to object to
the admonitions at trial.  Johnson argues that “the comments tainted the
presumption of innocence and violated [Johnson]’s right to an impartial judge
and were, therefore, fundamental error, of constitutional dimension, and
required no objection.”  (Br. at 31 (citing Blue v. State, 41 S.W.3d
129, 132 (Tex. Crim. App. 2000) (plurality op).)

        “Many . . .
admonitory or cautionary instructions are customarily used by criminal trial
judges at the time of the voir dire examination of the jury panel and at
various intervals of a trial to guard against jury misconduct.  The giving of
such instructions is largely within the discretion of the
court . . . .”  Walker v. State, 440 S.W.2d 653, 658
(Tex. Crim. App. 1969) (internal citation omitted); see Hernandez v. State, 169
Tex. Crim. 418, 421, 334 S.W.2d 299, 301-302 (1960); see generally Green v.
State, 934 S.W.2d 92, 106 (Tex. Crim. App. 1996); Etheridge v. State, 903
S.W.2d 1, 9 (Tex. Crim. App. 1994); Nunfio v. State, 808 S.W.2d 482, 484
(Tex. Crim. App. 1991).

        We consider in turn the trial
court’s admonitions concerning which Johnson now complains.  Johnson
misconstrues those admonitions.

        A.    “[M]ost
people don’t want to beat their head on a wall.”  First,
Johnson complains of the following italicized admonitions:

It’s no international secret or
national secret that all—most cases, I would say 90 to 95 percent of all cases
that are filed in the courts of these United States are settled.

       If it’s a civil case, it’s
settled by agreement between the parties.  It’s just agree to settle it and go
away.  The criminal cases are decided because the prosecution and the defense
determine what the proper outcome would be based on what an Ellis County jury would probably do in the case.  And that has to be approved by the Court. 
And that’s the way those cases are settled.

       And it’s not—and they don’t
come to that conclusion, those three groups don’t come to that conclusion by
going in the Judge’s office and throwing darts at a board.  They reached it by
what jurors have told us how they want particular cases and particular
situations under certain circumstances settled.  And you can pretty much hit it
pretty close.

       And most people don’t want to beat their
head on a wall.  But the system is designed that if you want to beat your head
on the wall, anybody that wants to beat their head on the wall, they’re allowed
to do so because that’s the privilege they have is having a jury decide the
case for them.

(Br. at 33 (quoting 2 R.R. at 13)
(emphasis added by Johnson).)[3]

        Johnson
argues:

Appellant contends any time the trial court
suggest[s] to the venire that a trial would be a waste of everyone’s time in a
criminal case, the trial court is telling the jury the defendant is the party
banging his head against the wall. . . .  This violates the
presumption of innocence because the trial court indicates to the jury the
defendant is guilty, and it violates appellant’s right to an impartial trial
court, because the trial court is expressing antagonism toward the defendant’s
decision to fight the prosecution.

(Br. at 33-34.)  The admonition being
fairly read, the trial judge admonished the panel that the parties could not
agree on the safe harbor of a plea to the court, and that one or both parties
instead preferred to risk the uncertainties of trial; the admonition cannot
reasonably be understood to signify that the trial judge was indicating his
judgment of the case or that he was not impartial.  See Mason v. State, 237
S.W.3d 800, 804 (Tex. App.—Waco 2007, pet. ref’d).  

        B.    The presumption of defendants’ innocence
“doesn’t mean they are innocent.”  Next, Johnson complains of
the following italicized admonitions:

       In every criminal case, a
defendant is presumed to be innocent.  That doesn’t mean they are innocent. 
What it means is the presumption of innocence standing alone is sufficient
to acquit a defendant unless the prosecution meets its burden of proof and
proves the defendant guilty by the standard provided by law.  That’s what
presumption of innocence means.

       It’s another way of saying
nobody has to prove they’re not guilty.  That’s the one clich[e] you hear
around and I think it’s going to apply, or certainly apply, in criminal trials
in the State of Texas is that you[] are innocent until proven guilty.

       So the presumption of innocence means that
you are innocent until proven guilty unless there’s sufficient evidence to
convince you beyond a reasonable doubt that a defendant is guilty.

(Br. at 34-35 (quoting 2 R.R. at 48)
(emphasis added by Johnson) (bracketed alterations added).)  

        Johnson argues:  “The trial
court said that defendants are presumed innocent but are not necessarily
innocent.  This gutted the presumption of innocence.  The correct articulation
is that the defendant is presumed innocent and remains innocent until proven
guilty beyond a reasonable doubt.”  (Br. at 35.)  

        The Texas Rules of Appellate
Procedure require that in order to preserve error on appeal an appellant’s
“brief must contain a clear and concise argument for the contentions made, with
appropriate citations to authorities and to the record.”  Tex. R. App. P. 38.1(h).  Where the
“appellant points us to nothing in the record, makes no argument, and cites no
authority to support []his proposition,” “[w]e will not make [the] appellant’s
arguments for him[,] and [will] hold the allegation to be inadequately
briefed.”  Wyatt v. State, 23 S.W.3d 18, 23 n.5 (Tex. Crim. App. 2000); see
Gallo v. State, 239 S.W.3d 757, 768 (Tex. Crim. App. 2007); Garcia v.
State, 887 S.W.2d 862, 882 (Tex. Crim. App. 1994).  Inadequately briefed
issues “present nothing for review.”  Saldano v. State, 232 S.W.3d 77,
107 (Tex. Crim. App. 2007), cert. denied, 128 S. Ct. 1446 (2008); see
Tex. R. App. P. 33.1(a); McCarthy
v. State, 65 S.W.3d 47, 49 n.2 (Tex. Crim. App. 2001); Penry v. State, 903
S.W.2d 715, 727 (Tex. Crim. App. 1995).  Inadequately briefed issues should be
overruled.  See Tong v. State, 25 S.W.3d 707, 710 (Tex. Crim. App. 2000)
(op. on orig. submission); Russeau v. State, 171 S.W.3d 871, 881 (Tex.
Crim. App. 2005), cert. denied, 126 S. Ct. 2982 (2006); DeBlanc v.
State, 799 S.W.2d 701, 705 (Tex. Crim. App. 1990).

        We assume without deciding
that Johnson adequately briefs his issue.  

        “[A]ll persons are presumed
innocent and no person may be convicted of an offense unless each element is
proved beyond a reasonable doubt.”  Tex.
Penal Code Ann. § 2.01 (Vernon 2003).  “The presumption of innocence
that surrounds every accused person means an assumption which prevails as the
judgment of the law until the contrary is proven.”  Cloud v. State, 150 Tex. Crim. 458, 461, 202 S.W.2d 846, 848 (1947) (op. on reh’g); accord Will v. State, 794
S.W.2d 948, 950 (Tex. App.—Houston [1st Dist.] 1990, pet. ref’d); Rideau v.
State, 751 S.W.2d 248, 250 (Tex. App.—Beaumont 1988, no pet.).  “[T]he
presumption of innocence does not carry with it the connotation that a
defendant is in fact innocent.”  Zimmerman v. State, 860 S.W.2d 89, 97
(Tex. Crim. App. 1993); accord Will at 950; Rideau at 250.   
“The so-called presumption of innocence is not an inference” in the usual
sense; “rather, it is an assignment of a burden of proof prior to trial based
on the substantive law requiring the State to prove guilt beyond a reasonable
doubt. . . .  [I]t is a ‘short-hand’ substitute for substantive
criminal law.”  Madrid v. State, 595 S.W.2d 106, 110 (Tex. Crim. App.
[Panel Op.] 1979) (op. on orig. submission); see Rideau at 250.

        Johnson does not establish
that the trial court’s admonition did not correctly state the law, or that the
admonition “gutted” a properly understood presumption of innocence.

        C.    Reasonable doubt
is “what it means to you.”  Next, Johnson complains of the
following italicized admonitions:

       But the burden of proof in
every criminal case is on the State.  They have the burden of proof.  The
defendant doesn’t have—I already explained to you, they don’t—the defendant
doesn’t have any burden to prove anything.  And that burden is . . .
beyond a reasonable doubt.

       That’s the standard that you’re
going to use to determine whether or not a defendant committed the offense, was
evidence sufficient to convince you that the defendant committed the offense
beyond a reasonable doubt.

       Those words will not be defined
for you.  They won’t get any further breakdown.  It’s been toyed with by the
legislature in courts in the past and they eventually always come to the same
conclusion beyond a reasonable doubt are words of common meaning and easily
understood by anybody who speaks the English language.

       So the attorneys will not be able
to tell you, just like I will not be able to tell you, what beyond a reasonable
doubt is.  It’s what it means to you.  But that’s the standard that you
have to use.  So everybody can get up here and tell you what it’s not, as long
as they don’t tell you what it is.

       And I can tell you that beyond
a reasonable doubt does not mean beyond all doubt, doesn’t mean beyond any
doubt, doesn’t mean beyond a hundred percent, doesn’t mean [to] a[n] absolute
certainty.  It doesn’t mean any—beyond a shadow of a doubt.  Doesn’t mean any
of those things.  Nor does . . . it mean probably, more likely than
not.  It sure looks that way.  If I was guessing, I would guess this way.  It’s
probably that way.  It’s none of those things either.

       The term you use to determine it is beyond
a reasonable doubt, and those words have no further legal definition.

(Br. at 35-36 (quoting 2 R.R. at
51-53) (emphasis and second bracketed material added by Johnson) (ellipses
added).)

        Johnson argues that the trial
court’s admonition invited the panelists “to redefine the standard” of proof
subjectively.  (Br. at 36, 37.)  Johnson argues: 

[W]hat Murphy[ v. State, 112
S.W.3d 592 (Tex. Crim. App. 2003)], Howard[ v. State, 941
S.W.2d 102 (Tex. Crim. App. 1996) (op. on reh’g)], and Garrett[ v.
State, 851 S.W.2d 853 (Tex. Crim. App. 1993),] are saying is jurors
determine whether the evidence meets proof beyond a reasonable doubt, which
depends on their subjective analysis of the weight of the evidence and
credibility of the witnesses.  Appellant contends Murphy, Howard, and Garrett
do not give jurors the freedom to redefine the standard.

(Br. at 37.)  

        “[T]he better practice is to
give no definition of reasonable doubt at all to the jury.”  Woods v. State,
152 S.W.3d 105, 115 (Tex. Crim. App. 2004) (quoting Paulson v. State, 28
S.W.3d 570, 573 (Tex. Crim. App. 2000)).  Voir-dire examination may not
“suggest to” a venire member “that he could require a different quantum of
proof,” other than that beyond a reasonable doubt, “depending on the nature of
the case.”  Goff v. State, 931 S.W.2d 537, 550 (Tex. Crim. App. 1996)
(plurality op.).  But each juror may properly form “his personal threshold of
reasonable doubt,” that is, “the type and amount of evidence” a juror would
“require to reach th[e] level of confidence” of beyond a reasonable doubt.  Murphy
at 598 (quoting Howard at 129); see Mason, 237 S.W.3d at
805.  

        Fairly read, again, the trial
judge’s admonition correctly stated that he could not state concretely the
evidence necessary to prove Johnson guilty beyond a reasonable doubt; it did
not invite the panelists to redefine the standard of proof beyond a reasonable
doubt.  Johnson concedes, “Reasonable doubt needs no amplification and has a
commonly-accepted meaning.”  (Br. at 37 (citing Paulson, 28 S.W.3d at
570).)  Johnson correctly states that what he calls jurors’ permissible
“subjectivity lies in what evidence[] meets proof beyond a reasonable doubt.” 
(Br. at 38); see Murphy at 598; Howard at 127; Garrett at
859.  Johnson does not establish that the trial court’s admonition did not
correctly state the law, or that the admonition invited the panelists to
redefine the standard of proof.  

        D.   Extraneous-Act
Evidence.  Lastly, Johnson complains concerning the following
admonitions:

[I]n the first phase of the case, all
you’re going to hear is whether a defendant committed the offense—the facts and
circumstances, if there are any to support it, of whether or not the defendant
committed the offense that’s charged against him.

       You won’t hear in the punishment
phase—I mean, excuse me, you won’t hear in the guilt or innocence phase whether
a defendant is a good person or . . . bad person.  You won’t hear a
defendant ha[s]—in all likelihood, you won’t hear whether a defendant has a
criminal record or does not have a criminal record.

       You won’t have—you won’t
have—you won’t hear the punishment—in the guilt or innocence phase whether the
defendant has committed other bad acts in the past or has not committed other
bad acts in the past, nor will you probably hear whether a defendant has
committed good acts in the past or bad accounts [i]n the past.  Or not
committed—or not performed good acts in the past.

       In other words, whether or not
a . . . defendant has created or invented the cure for cancer or
whether a defendant steals great-grandma’s Social Security check so the
defendant can buy dope is of no relevance to the guilt or innocence phase of
the case.

       Because the jury is to
determine, or the Court, if it was trying the case, to determine only whether
or not the defendant committed the offense that’s charged against them.  And
whether they’re a good person or whether they’re a bad person or whether
they’re a good old boy or a bad old boy doesn’t matter [any] at all as to
whether or not the defendant committed the offense that’s charged against him.

       In the second phase of the case, if you
find the defendant guilty, all those things are relevant regarding punishment.

(Br. at 40-41 (quoting 2 R.R. at
69-70) (first bracketed alteration by Johnson) (ellipses added).)  

        Johnson
argues: 

At punishment, the jury will hear whatever the
judge deems relevant to assessing a proper punishment.  This was all the trial
court needed to say.  Instead, the trial judge planted the seed in the
prospective jurors’ heads that there may be a great deal about the defendant
they would not hear until the punishment phase.

(Br. at 41 (internal citation
omitted).)

        Fairly read, again, the trial
judge’s admonition does not effectively imply that evidence of extraneous bad
acts committed by Johnson exists.

        Conclusion.  Johnson does not show that the trial court’s
admonitions vitiated the presumption of innocence, or that the trial court
abused its discretion in its admonitions.  Johnson forfeits his complaint.  We
overrule Johnson’s second issue.

        III.  Admissibility of Evidence.  In
Johnson’s third issue, he contends that the trial court erred in overruling
Johnson’s objections to evidence.  

        “An appellate court may not
disturb a trial court’s evidentiary ruling absent an abuse of discretion.”  Winegarner
v. State, 235 S.W.3d 787, 790 (Tex. Crim. App. 2007); accord Cameron, 241
S.W.3d at 19; Montgomery v. State, 810 S.W.2d 372, 391 (Tex. Crim. App.
1991) (op. on reh’g).  “In other words, as long as the trial court’s decision
was within the zone of reasonable disagreement and was correct under any theory
of law applicable to the case, it must be upheld.”  Winegarner at 790; accord
Casey v. State, 215 S.W.3d 870, 879 (Tex. Crim. App. 2007); Montgomery at 391 (op. on reh’g).  

        Evidence is probative if it
has “any tendency to make the existence of any fact . . . more
probable or less probable than it would be without the evidence.”  Tex. R. Evid. 401; see Miller v.
State, 36 S.W.3d 503, 507 (Tex. Crim. App. 2001).  “Evidence need not by
itself prove or disprove a particular fact . . . ; it is
sufficient if the evidence provides a small nudge toward proving or disproving
some fact . . . .”  Stewart v. State, 129 S.W.3d 93,
96 (Tex. Crim. App. 2004); accord Mendiola v. State, 21 S.W.3d 282, 284
(Tex. Crim. App. 2000); Montgomery, 810 S.W.2d at 376 (1990) (op.
on orig. submission). 

        Johnson complains of the
admission of evidence of a recording of a telephone call that he placed to
Williams from jail.  In the conversation, he sought for Williams to sign a
tearful statement establishing an alibi for him, and to cause Mayo and Cox to
sign statements recanting their statements to police officers.  The State
offered the evidence for purposes of “impeachment.”  (3 R.R. at 143.)  

        A.    Ground of Admissibility. 
Johnson argues that the evidence constituted improper impeachment under Texas
Rules of Evidence 608 and 613, and that the evidence was not admissible as a
hearsay exception under Rule 803(24).  See Tex. R. Evid. 608, 613, 803(24).  We agree that those rules
do not govern Johnson’s case.  We nonetheless hold that the evidence was
admissible for purposes of impeachment and as substantive evidence of Johnson’s
guilt.

        The State offered evidence of
a telephone call that Johnson placed from jail two days after his arrest, in
the form of a recording of the call.  The State argued, “The defendant calls
[Williams] and tells her to go—very specifically to go over to Mr. James’ house
and—first of all, for her to prepare a statement and he describes for her how
to prepare the statement, generally what to say in the statement.  Take that
statement to Mr. James and get him to sign it.  And then take it to a notary.”[4]  (3 R.R. at 147 (bracketed
alterations added).)  In the recording, Johnson and Williams conversed, in
relevant part, as follows:

       MARCUS JOHNSON: Hey, baby. 
What you doing?  I miss you.

       BRUENTE WILLIAMS: I miss you.

       MARCUS JOHNSON: Huh?

       BRUENTE WILLIAMS: I miss you.

       MARCUS JOHNSON: Yeah.  So
what’s been going on?

       BRUENTE WILLIAMS: Nothing.

       MARCUS JOHNSON: Nothing.

       BRUENTE WILLIAMS: I was worried
about you today.  Why didn’t you tell me that you had to go to court at 9:00?

       MARCUS JOHNSON: I didn’t say
that.

       BRUENTE WILLIAMS: You did say. 
You and your mom told me that.

       MARCUS JOHNSON: (Inaudible)
court all day, Baby.  I ain’t got no lawyer.  They got a 180 days before they
indict me.

       BRUENTE WILLIAMS: What?

       MARCUS JOHNSON: I can sit here
180 days before they got to indict me.

       BRUENTE WILLIAMS: You could
have left that piece of information out.

       MARCUS JOHNSON: Huh?

       BRUENTE WILLIAMS: You could
have left that piece of information out.

       MARCUS JOHNSON: What’s that?

       BRUENTE WILLIAMS: That 180
days.

       MARCUS JOHNSON: (Inaudible)
that’s why I’m trying to get everything took care of now.  See what I’m
saying.  Just let me—let me break it down to you so you understand.  Hold on. 
All right.  By you going and having Mr. James sign that statement, right?

       BRUENTE WILLIAMS: Yeah.

       MARCUS JOHNSON: See, I didn’t
even know Mr. James was out there.  You know what I’m saying?  Like you can
pretty much write it up yourself.  You know what I’m saying.  Make it legible,
you know, like in print saying that I, you know what I’m saying, so and so, so
and so, hereby, you know what I’m saying, state that I was on the porch.  I was
at the house, (inaudible) at his house, you know what I’m saying, and had a
clear view of y’all’s house, you know what I’m saying, and did not see, you
know what I’m saying, so and so Marcus Johnson come through there.  I did—I do
know him, have known him or whatever.  You know what I’m saying.

       Make it where they can’t say,
well, it may be—he could have made a mistake.  You know what I’m saying?

       BRUENTE WILLIAMS: Yeah.

       MARCUS JOHNSON: But make it
where like it’s him saying something that he might have—that he saying
somebody’s over there but he know that it wasn’t me.  You know what I’m saying?

       BRUENTE WILLIAMS: Yeah.

       MARCUS JOHNSON: And then I say
(Inaudible) talking to that old man, right, the one that supposed to got
robbed.

       BRUENTE WILLIAMS: Yeah.

       MARCUS JOHNSON: And like say
he’s going to talk (inaudible) to let him know like people them saying, like,
hey, you know, know what I’m saying, that’s my—that’s my husband, whatever,
he’s been staying out there for the long—longer than y’all or whatever.  Ain’t
nothing like this ever happened.  He wouldn’t do nothing like this.  You know
what I’m saying.  Mistaken identity.

       If you make it—you know what
I’m saying, because the officer told me that he said he couldn’t identify me,
you know what I’m saying.  And once he signs a statement saying—all you got to
do is write up (inaudible) saying, you know, we just trying to keep—I’m trying
to keep my husband from being, you know what I’m saying, convicted from
something he didn’t do or whatever.  You know what I’m a saying.

       And tell him that y’all
automatically signed statement, you know what I’m saying, saying that—you know
what I’m saying, you tell the police when they brought my husband in front of
you that you could not identify him as the person that robbed you.  That way
once, see, you do all that, Baby, do that now because (inaudible) Erisman the
one trying to push the case.

       BRUENTE WILLIAMS: (Inaudible.)

       MARCUS JOHNSON: (Inaudible.) 
You know what I’m saying, you got to beat him to the punch because when they
talk to him they going to tell him don’t talk to y’all.  Don’t do nothing
(inaudible).  He’s going to tell them all that.  Don’t talk to y’all, don’t try
to (inaudible).  He’s trying to get the man to sign a statement saying that it
might have been me or they (inaudible) put my picture in front of the man’s
face.  You know what I’m saying.

       And they put my pictures in
front of their face.  Of course they going to know who I am then.  But if y’all
go right then, (inaudible) before y’all do anything else get him to sign a
statement.

       Then when I get my lawyer or
whatever, right, when my lawyer get them papers it won’t even take no 180
days.  Because you cannot indict me if the man that got robbed saying he
couldn’t identify me as the man, then the man that got robbed that morning
could not know he was out there saying that he could say that it wasn’t me what
kind of case they got.

       Then you sign a statement
saying that I was in bed with you, whatever, you a separate witness, you know
what I’m saying.

       BRUENTE WILLIAMS: Yeah.

       MARCUS JOHNSON: By you not
having no enemies or whatever, you know what I’m saying, you sign a statement
that I Bruente, woo woo, you know what I’m saying, woo.  You know what I’m
saying, testify that my husband, you know what I’m saying?

       BRUENTE WILLIAMS: Yeah.

       MARCUS JOHNSON: But all that’s
got to be done immediately, you know what I’m saying.

       BRUENTE WILLIAMS: Yeah.

       MARCUS JOHNSON: But if I (inaudible).  You
pretty much all I’ve been talking about, my wife, my wife.  My wife.  I miss my
wife for real.

([sic] 3 R.R. at 163-68.)

        The
trial court found and ruled: 

       The Court finds that it’s
admissible on the issue of the knowledge of the defendant as to . . .
the offense it question.  It could be deduced as an admission or it’s possible
to be deduced by the fact finder as an admission.

       It’s admissible as
corroboration of the witness Cox. . . .

       . . . .  So, therefore, the
objection’s—and even under the balancing test I find the probative value does
not—is not outweighed by the prejudicial effect.  Overrule the objection.

(3 R.R. at 155-56; see id. at
160, 161.)

        1.     Admission Against
Interest.  Johnson argues, first, that the evidence was not admissible as
an admission against interest.  

        The Rules of Evidence’s hearsay
rule provides, “Hearsay is not admissible except as provided by statute or
these rules or by other rules promulgated pursuant to statutory authority.”  Tex. R. Evid. 802.  “’Hearsay’ is a
statement, other than one made by the declarant while testifying at the trial
or hearing, offered in evidence to prove the truth of the matter asserted.”  Id. 801(d).  But “not excluded by the hearsay rule” is a
statement against interest, that is: 

[a] statement which was at the time of its making
so far contrary to the declarant’s pecuniary or proprietary interest, or so far
tended to subject the declarant to civil or criminal liability, or to render
invalid a claim by the declarant against another, or to make the declarant an
object of hatred, ridicule, or disgrace, that a reasonable person in [the]
declarant’s position would not have made the statement unless believing it to
be true.

Id. 803, (24).  Rule 801 provides, however, “A
statement is not hearsay if” the statement is an “[a]dmission by a
party-opponent,” such as when “[t]he statement is offered against a party and
is . . . the party’s own statement . . . .”  Id. 801(e), (2), (A).  “. . . Rule
801(e)(2)(A) plainly and unequivocally states that a criminal defendant’s own
statements, when being offered against him, are not hearsay.”[5]  Trevino v. State, 991 S.W.2d 849,
853 (Tex. Crim. App. 1999); accord Moreno v. State, Nos.
13-03-649-CR & 13‑03-650-CR, 2005 Tex. App. LEXIS 4091, at *8 (Tex. App.—Corpus Christi May 26, 2005, pet. ref’d) (not designated for publication) (mem.
op.); see Bone v. State, 77 S.W.3d 828, 835 & n.25 (Tex. Crim. App.
2002).  

        The evidence of which Johnson
complains consisted of his own statement.  Johnson’s statement did not
constitute hearsay, so Rule 803(24) does not govern the statement’s
admissibility.  By the same token, Johnson’s admissions are not barred by the
hearsay rule.

        2.     Impeachment.  Next,
Johnson argues that the evidence did not constitute proper impeachment
evidence.  The trial court would not have abused its discretion in overruling
that objection.

        2.     a.     Impeachment by Evidence of Untruthful Character. 
First, Johnson argues under Rule of Evidence 608(b).[6]  See Tex. R. Evid. 608(b).  Rule 608 governs impeachment of a
witness’s character for truthfulness.  See Tex. R. Evid. 608; Dixon v. State, 2 S.W.3d 263, 271
(Tex. Crim. App. 1998) (op. on reh’g); Cervantes v. State, No. 10‑05-00096-CR,
2006 Tex. App. LEXIS 3164, at *4-5 (Tex. App.—Waco Apr. 19, 2006, no pet.) (not
designated for publication); 1 Steven
Goode, Olin Guy Wellborn III, & M. Michael Sharlot, Texas Practice: Guide
to the Texas Rules of Evidence § 608.1, at 718 (3d ed. 2002).  Rule
608(b) provides: “Specific instances of the conduct of a witness, for the
purpose of attacking or supporting the witness’ credibility, other than
conviction of crime as provided in Rule 609, may not be inquired into on
cross-examination of the witness nor proved by extrinsic evidence.”  Tex. R. Evid. 608(b); see id.
609.

        Johnson’s
argument is as follows:

       Other than by conviction for a crime, a
witness’s character for truthfulness may not be impeached by proof of a
specific instance of conduct.  Tex. R.
Evid. 608(b).  Gonzales[ v. State], 929
S.W.2d[ 546,] 549 [(Tex. App.—Austin 1996, pet. ref’d)].  Rule 608(b) is
very restrictive and allows for no exceptions.  Gonzales, 929 S.W.2d at
549.  Rule 609 sets out how convictions can be used to impeach.  Tex. R. Evid. 609.

(Br. at 45); see Tex. R. Evid. 608-609.  We assume
without deciding that Johnson preserved his complaint in the trial court.[7]  Even on appeal, however, we
do not readily discern Johnson’s complaint under Rule 608.  Johnson’s argument
under Rule 608 is inadequately briefed.[8]

        2.     b.    Impeachment by Evidence of Bias.  Johnson
next appears to complain under Rule of Evidence 613.[9]  Johnson argues:

       Appellant contends the evidence was not
admissible under rule 612 of the Texas Rules of Evidence.  Under rule 612,
there is a right to impeach a witness by proof of circumstances or statements
showing bias or interest on the part of the witness.  Tex. R. Evid. 612(b); Gonzales, 929 S.W.2d at 549. 
Rule 612 places no limits on the sort of evidence that a party may adduce to
show a witness’s bias or interest.  Gonzales, 929 S.W.2d at 549.  The
impeaching party must show that the witness’s attitude is such that he is
likely to favor or disfavor a particular litigant’s positions for reasons
unrelated to the merits of the suit.  Gonzales, 929 S.W.2d at 549.  

(Br. at 45.)

        Rule 613(b) governs
impeachment by evidence of bias.  Bee v. State, 974 S.W.2d 184, 189
(Tex. App.—San Antonio 1998, no pet.); 1
Goode et al. § 613.1 (3d ed.); id. § 613.6, at 810. 
The rule permits “impeaching a witness by proof of circumstances or statements
showing bias or interest on the part of such witness.”  Tex. R. Evid. 613(b).

        Johnson
argues:

The tape recording showed appellant wanted
Williams to get a statement from Cox that Cox was mistaken.  Williams got a
statement from Cox in which Cox maintained he saw appellant.  Appellant was not
a witness, so the tape recording could not be used to show his bias or
interest.  Both Cox and Williams were witnesses, but the tape recording does
not show how either had a bias or interest.  Williams was appellant’s
girlfriend and appellant sometimes referred to her as his wife, but that was
not a contested issue—it was not an issue upon which Williams needed
impeaching.  (III RR 81.)  Rule 612 was not a basis for admitting the tape
recording.

(Br. at 45-46.)  

        We do not perceive that the
State sought to admit the evidence as evidence of the bias of a witness.  The
evidence is, nonetheless, probative of Williams’s bias in favor of Johnson.[10]  Under Rule 613(b),
“[p]arties are allowed great latitude to show ‘any fact which would or might
tend to establish ill feeling, bias, motive and animus on the part of the
witness.’”  Carpenter v. State, 979 S.W.2d 633, 634 (Tex. Crim. App.
1998) (quoting London v. State, 739 S.W.2d 842, 846 (Tex. Crim. App.
1987)) (alteration added); see Smith v. State, 236 S.W.3d 282, 292 (Tex.
App.—Houston [1st Dist.] 2007, pet. ref’d).  “The rule encompasses all facts
and circumstances, which when tested by human experience, tend to show that a
witness may shade his testimony for the purpose of helping to establish one
side of the cause only.”  Carroll v. State, 916 S.W.2d 494, 497-98 (Tex.
Crim. App. 1996) (emphasis in orig.); accord Smith at 292.  Among such
facts and circumstances is the witness’s familial or personal relationship with
a party.  E.g., Hanner v. State, 572 S.W.2d 702, 707 n.4 (Tex. Crim.
App. 1978) (en banc); Vaughn v. State, 888 S.W.2d 62, 74-75 (Tex.
App.—Houston [1st Dist.] 1994), aff’d, 931 S.W.2d 564 (Tex. Crim. App.
1996); see 1 Goode et al. § 613.6,
at 815-16 (3d ed.).

        Here, the evidence of which
Johnson complains shows the familial or quasi-familial relationship between
Johnson and Williams.  In that evidence, they show affection and concern for
each other.  The evidence tended to prove a ground of bias on Williams’s part
in favor of Johnson.  Johnson does not show that the trial court abused its
discretion in overruling Johnson’s objection under Rule 613.

        2.     c.     Other Impeachment.[11]  Moreover, the evidence would be
otherwise probative for purposes of impeachment of Williams’s testimony.  

        Besides those noted by
Johnson, another form of impeachment is that “by contradiction” or “by another
witness.”  See Michael v. State, 235 S.W.3d 723, 726 (Tex. Crim. App.
2007); Daggett v. State, 187 S.W.3d 444, 454 n.24 (Tex. Crim. App. 2005)
(citing United States v. Antonakeas, 255 F.3d 714, 724-25 (9th Cir.
2001)); 1 Goode et al. § 607.1,
at 690-91 (3d ed.); id. § 607.3.  Still another form of impeachment
is by evidence of defect of capacity, such as of memory.  See Michael at
726; 1 Goode et al. § 607.4,
at 707-708 (3d ed.).

        The evidence of which Johnson
complains was probative for purposes of impeachment by contradiction of
Williams’s testimony or impeachment of her memory.  Williams had previously
testified as follows on direct examination by the State:

       Q.   Now, do you remember
Marcus calling you from the jail and saying, hey,  Baby, you got to go talk to
Mr. James and go get a statement from him?

       A.    No, I don’t remember
that.

       Q.   Now do you not remember it
or did that not occur?

       A.    I don’t remember that.

(3 R.R. at 94.)

       Q.   So it wouldn’t be unusual
for Marcus to say go get a statement from Mr. James?

       A.    It would be unusual. 
That’d be unusual.

       Q.   Why would that be
unusual?  Why would Marcus ask you to go get a statement from Mr. James?

       A.    I don’t remember him
asking me.  That is what I’m trying to tell you.

       Q.   And, again, my question is
do you not remember that or did he not do that?

       A.    I don’t remember if he
called me and asked me anything like that.

       Q.   You don’t remember him
saying take that statement and go get it notarized and take it down to the DA? 
You don’t remember any of that?

       A.    No.

       Q.   And, again, do you not
remember any of that or did that not happen?

       A.    I don’t remember.

       Q.   So it could have happened?

       A.    I do not remember.

(3 R.R. at 95-96.)

       Q.   And what has Marcus told
you about what happened that night?

       A.    What do mean what he told
me?  He hasn’t told me anything.  We was there.  I already know that happened.

       Q.   Do you remember him
telling you to make sure you told the police that y’all had been together all night?

       A.    No.

       Q.   He never told you that?

       A.    No.  He can’t tell me
something that I already know.

       Q.   So you’re confident then
that y’all had been together all night?

       A.    Yes.

       Q.   And he never had to tell
you to tell that story?

       A.    No. 

(3 R.R. at 96-97.)

        The evidence of which Johnson
complains was probative for purposes of impeachment.  It tended, by
contradiction, to impeach her testimony that Johnson did not tell her to give
an alibi statement, as he did in the recording.  It also tended to impeach her
memory, in that she testified that she did not remember particulars of
Johnson’s conversations with her in the recording.

        3.     Substantive Evidence
of Guilt.  The evidence of which Johnson complains also constituted
evidence of Johnson’s consciousness of guilt.  

        Texas Rule of Evidence 404
provides that “[e]vidence of other crimes, wrongs or acts” than that on trial:
“is not admissible to prove the character of a person in order to show action
in conformity therewith.  It may, however, be admissible for other purposes, such
as . . . knowledge [or] identity . . . .”  Tex. R. Evid. 404(b).  “[C]riminal acts
that are designed to reduce the likelihood of prosecution, conviction, or
incarceration for the offense on trial are admissible under Rule 404(b) as
showing ‘consciousness of guilt.’”  Ransom v. State, 920 S.W.2d 288, 299
(Tex. Crim. App. 1996) (op. on reh’g) (quoting, e.g., Brown v. State,
657 S.W.2d 117, 119 (Tex. Crim. App. [Panel Op.] 1983)); see, e.g., Gonzalez
v. State, 117 S.W.3d 831, 842 (Tex. Crim. App. 2003); Pierce v. State, 234
S.W.3d 265, 268 (Tex. App.—Waco 2007, pet. ref’d).  “[A]n attempt to tamper
with a witness is evidence of ‘consciousness of guilt.’”  Wilson v.
State, 7 S.W.3d 136, 141 (Tex. Crim. App. 1999).

        In the evidence of which
Johnson complains, he admitted, “[T]he officer told me that [Mayo] said he
couldn’t identify me.”  (3 R.R. at 166.)  Johnson also acknowledged that it was
he whom Cox had seen, and admitted, “I didn’t even know Mr. James was out
there.”  (Id. at 164.)  Johnson directed Williams to get a statement
from Mayo recanting his statement to officers, and a recanting statement from
Cox to the effect that he had seen someone other than Johnson.  Johnson also
directed Williams to give a statement to police officers to the effect that he
had been in bed all night until Sgt. Erisman knocked on Johnson’s door.  The
trial court would not have erred in finding the evidence probative of Johnson’s
consciousness of guilt.

        B.    Rule of Evidence
403.  Next, Johnson argues under Rule of Evidence 403.  See Tex. R. Evid. 403.  Rule 403 provides,
“Although relevant, evidence may be excluded if its probative value is
substantially outweighed by the danger of unfair prejudice, confusion of the
issues, or misleading the jury, or by considerations of undue delay, or
needless presentation of cumulative evidence.”  Id.

        We assume without deciding
that Johnson preserves his complaint.

Although the Texas Rules of Evidence are
intentionally slanted toward the inclusion of all relevant evidence, Rule 403
gives the trial court considerable discretion to exclude evidence when it
appears to that individual judge, in the context of that particular trial, to
be insufficiently probative when measured against the countervailing factors
specified in the rule.

Winegarner, 235 S.W.3d at 791; see Montgomery, 810
S.W.2d at 378-79 (op. on orig. submission); id. at 391-92 (op. on
reh’g); e.g., Mumphrey v. State, 155 S.W.3d 651, 663 (Tex.
App.—Texarkana 2005, pet. ref’d).  

[A] trial court, when undertaking a Rule 403
analysis, must balance (1) the inherent probative force of the proffered
item of evidence along with (2) the proponent’s need for that evidence
against (3) any tendency of the evidence to suggest decision on an
improper basis, (4) any tendency of the evidence to confuse or distract
the jury from the main issues, (5) any tendency of the evidence to be
given undue weight by a jury that has not been equipped to evaluate the
probative force of the evidence, and (6) the likelihood that presentation
of the evidence will consume an inordinate amount of time or merely repeat
evidence already admitted.

Gigliobianco v. State, 210 S.W.3d 637, 641-42 (Tex. Crim. App. 2006); see
State v. Mechler, 153 S.W.3d 435, 440 (Tex. Crim. App. 2005); Montgomery at 389-90 (op. on reh’g); see also Gallo, 239 S.W.3d at
762.  “The rule gives the trial court considerable latitude to assess the
courtroom dynamics, to judge the tone and tenor of the witness’ testimony and
its impact upon the jury, and to conduct the necessary balancing.”  Winegarner
at 791.

        1.     Cumulativeness.  First,
Johnson argues that the evidence was cumulative.[12]  

        Rule 403 provides that
“evidence may be excluded if its probative value is substantially outweighed
. . . by considerations of undue delay, or needless presentation of
cumulative evidence.”  Tex. R. Evid.
403.

       Texas courts have recognized cumulativeness
as a factor that may allow the exclusion of relevant evidence.  “Cumulative”
suggests that other evidence on the same point has already been received.  But
this fact, without more, is not a basis for exclusion.  The rule pertains to
the “needless presentation” of such evidence.  Therefore, judges should be
sensitive to the “right” of a party to make her case in the most persuasive
manner possible.  This may demand two or more witnesses or documents addressed
to the same material issue, as where the evidence objected to as cumulative
carries special weight because it comes from a disinterested source. 
Similarly, the evidence, although cumulative, may come in a form which enhances
its effectiveness.  In addition, the cumulative effect of the evidence may
heighten rather than reduce its probative force.

Alvarado v. State, 912 S.W.2d 199, 212-13 (Tex. Crim. App. 1995)
(quoting 1 Steven Goode, Olin Guy
Wellborn iii, & M. Michael Sharlot, Texas Practice: Guide to the Texas
Rules of Evidence; Civil and Criminal § 403.3, at 135-36 (2d ed.
1993)); accord Bell v. State, No. 03-00-00243-CR, 2001 Tex. App. LEXIS
7889, at *29 (Tex. App.—Austin Nov. 29, 2001, pet. ref’d) (not designated for
publication); see 1 Goode et al. § 403.02,
at 167 (3d ed.) (citing Linthicum v. Richardson, 245 S.W. 713, 715 (Tex.
Civ. App.—Beaumont 1922, no writ)).  “[E]vidence that may be cumulative as to
one point may not have that character with respect to another material issue.” 
1 Goode et al. § 403.2, at
168 (3d ed.) (citing 2 David W. Louisell & Christopher B. Mueller, Federal Evidence § 128 (1978)).

        Johnson
argues:

       Appellant contends any relevance
. . . constituted the needless cumulation of evidence.  Tex. R. Evid. 403.  The recording does
not show appellant instructed Williams to suborn perjury.  The recording shows
appellant asking Williams to pin down a witness, which was precisely what she
did, even though it meant Cox identified appellant as the person he saw.  This
was cumulative of Cox’s earlier testimony.

(Br. at 47.)      

        Evidence that Johnson, as he
argues, wanted Williams to “pin down” Cox was not cumulative of Cox’s
testimony.  (Cf. Johnson Br. at 47.)  When Cox was first called to
testify, he did not testify concerning Williams’s giving him a statement to
sign.  Cox testified concerning that only when he was later recalled, after the
evidence of which Johnson complains was admitted.  Johnson does not show that
the trial court abused its discretion in overruling Johnson’s cumulativeness
objection.

        2.     Unfair Prejudice.  Next,
Johnson argues that the evidence was unfairly prejudicial.

        Rule 403 provides that
“evidence may be excluded if its probative value is substantially outweighed by
the danger of unfair prejudice . . . .”  Tex. R. Evid. 403.  “Unfair prejudice
refers not to an adverse or detrimental effect of evidence but to an undue
tendency to suggest a decision on an improper basis.”  Casey v. State, 215
S.W.3d 870, 883 (Tex. Crim. App. 2007) (citing Old Chief v. United States, 519
U.S. 172 (1997)); accord Gigliobianco, 210 S.W.3d at 641; Rogers v.
State, 991 S.W.2d 263, 266 (Tex. Crim. App. 1999); Montgomery, 810
S.W.2d at 389 (op. on reh’g).  “Unfair prejudice does not arise from the mere
fact that evidence injures a party’s case.  Virtually all evidence that a party
offers will be prejudicial to the opponent’s case, or the party would not offer
it.”  Casey at 883 (citing Cohn v. State, 849 S.W.2d 817, 820
(Tex. Crim. App. 1993)).  “To violate Rule 403, it is not enough that the
evidence is ‘prejudicial’—it must be unfairly prejudicial.”  Vasquez
v. State, 67 S.W.3d 229, 240 (Tex. Crim. App. 2002) (citing Rogers at 266) (emphasis in Vasquez).  “Evidence is unfairly
prejudicial only when it tends to have some adverse effect upon a defendant
beyond tending to prove the fact or issue that justifies its admission into
evidence.”  Casey at 883 (citing United States v. Figueroa, 618
F.2d 934 (2d Cir. 1980)).  “The prejudicial effect may be created by the
tendency of the evidence to prove some adverse fact not properly in issue or
unfairly to excite emotions against the defendant.”  Id.

. . . Rule 403’s “use of the word
‘may’ reflects the draftsman’s intent ‘that the trial judge be given a very
substantial discretion in “balancing” probative value on the one hand and
“unfair prejudice” on the other, and that he should not be reversed simply
because an appellate court believes that it would have decided the matter
otherwise.’”  

Powell v. State, 189 S.W.3d 285, 288 (Tex. Crim. App. 2006)
(quoting Manning v. State, 114 S.W.3d 922, 926 (Tex. Crim. App. 2003)); see
 Montgomery at 391 (op. on reh’g).

        Johnson
argues:

       Appellant contends any relevance was
substantially outweighed by the danger of unfair prejudice . . . . 
Tex. R. Evid.
403. . . .  The unfair prejudice . . . lay in the
possible appearance appellant was attempting to suborn perjury.  As explained
in the sufficiency complaint, even assuming Cox saw appellant, it does not
follow that appellant committed the robbery.

(Br. at 47.)  We assume without
deciding that Johnson’s issue is adequately briefed.  We agree with Johnson
that the evidence does not clearly show subornation of perjury.  The evidence
does, however, fairly show that he sought to hinder his prosecution.  We
understand Johnson to argue that the only probative value of the evidence was
to prove that it was Johnson whom Cox saw.  For the reasons stated above,
though probative on that matter, the evidence also had probative value on
Johnson’s consciousness of guilt and on other matters.  Johnson does not show
that the trial court abused its discretion in overruling Johnson’s objection to
unfair prejudice.

        Conclusion.  Having found that Johnson does not show that the
trial court erred in overruling Johnson’s evidentiary objections, we overrule
Johnson’s third issue.

        Conclusion.  Having overruled
Johnson’s issues, we affirm.

TOM GRAY

Chief Justice

Before Chief Justice Gray,

        Justice Vance, and

        Justice Reyna

        (Justice Vance concurring)

Affirmed

Opinion delivered and filed May 28, 2008

Do not publish

[CrPM]









          [1] A
“do-rag” is “a kerchief worn esp[ecially] to cover the hair.”  Merriam-Webster’s Collegiate Dictionary 373
(11th ed. 2003).





          [2] The
knife is plainly serrated.  





          [3] Johnson
also notes the following similar admonition:

Juries tell us how they want
cases settled.  And the parties who are involved in the case try to settle them
along those lines.

          And
if any of those parties don’t agree as to that’s how an Ellis County jury would
settle it, then any of those parties have a right to request that a jury be
called to decide those cases.  So that’s, basically, the way those happen.

(Br. at 34 (quoting 2 R.R. at
16).)





          [4] The
parties sometimes refer to James Cox as “Mr. James.”  (E.g., 3 R.R. at
94, 95, 147, 164.)





          [5] Other
matters, such as voluntariness, are relevant to the admissibility of a criminal
defendant’s post-arrest statements as party-opponent statements.  See, e.g.,
U.S. Const. amend. V; Miranda
v. Arizona, 384 U.S. 436 (1966); Tex.
Const. Art. I, § 10; Tex.
Code Crim. Proc. Ann. art. 38.22, § 5 (Vernon 2005); Berry, 233
S.W.3d at 855; Ochoa v. State, 573 S.W.2d 796, 799-800 (Tex. Crim. App.
1978); Kimball v. State, 24 S.W.3d 555, 563 (Tex. App—Waco 2000, no
pet.).  Johnson does not raise those matters.





          [6] Johnson
concedes that his trial objection was in terms of Rule of Evidence 609, which
governs impeachment by prior conviction.  See Tex. R. Evid. 609.  Johnson, however, argues: 

It is axiomatic that where the correct
ground of exclusion was obvious to the trial judge and opposing party, no
waiver results from a general or imprecise objection.  Although appellant did
not specifically refer to rule 608, appellant did refer to rule 609, and
contextually the court and State would have understood that was the basis of
his objection.

(Br. at 45 (citing Zillender
v. State, 557 S.W.2d 515, 517 (Tex. Crim. App. 1977))); cf. Tex. R. App. P. 33.1(a)(1)(A); Bennett
v. State, 235 S.W.3d 241, 243 (Tex. Crim. App. 2007).  We assume without
deciding that Johnson’s trial objection preserved his complaint for appellate
review and that Johnson’s issue on appeal comports with his objection.





          [7] At
trial, Johnson objected, “Rule 608—I’m sorry, 609 I believe is—there’s just not
proper—that’s just not proper impeachment of a witness.  The only—the only
impeachment of a witness for purpose of attacking credibility of a witness the
only thing they can use is conviction of a crime.”  ([sic] 3 R.R. at 144; see
id. at 155.)





          [8] We
do not, in any case, perceive that the State offered the evidence to impeach a
witness’s character for truthfulness.  Character “means ‘a generalized
description of a person’s disposition, or of the disposition in respect to a
general trait, such as honesty . . . .’”  Wheeler v.
State, 67 S.W.3d 879, 882 n.2 (Tex. Crim. App. 2002) (quoting Charles McCormick, Evidence § 195
(4th ed. 1992)); accord 1 Goode
et al. § 404.2, at 179-80 (3d ed.).





          [9] Johnson
refers to Rule 612(b), which governs the use of writings to refresh memory.  See
Tex. R. Evid. 612(b).  We
understand Johnson, citing Gonzales v. Texas, to refer to Rule of
Evidence 613(b), the successor to Texas Rule of Criminal Evidence 612(b).  See
Gonzales, 929 S.W.2d at 549 (interpreting Tex.
R. Crim. Evid. 612(b), 49 Tex.
B.J. 220, 228 (1986) (repealed 1998) (current version at Tex. R. Evid. 613(b))). 





          [10] At
trial, Johnson’s counsel conceded that the evidence “could only go really to
[Williams’s] credibility.”  (3 R.R. at 146.)  





          [11] After Johnson had made
his objections to improper impeachment, the following colloquy took place
between the trial court and Johnson’s counsel:

          THE COURT:  Yeah.  But
that’s not all of the impeachment rule.  Otherwise you couldn’t even ask
cross-examination questions because it wouldn’t come under that Rule 609.

          MS. SHIPLEY: Well, I
agree with that.  You can certainly cross-examine people and they certainly did
that, but [Williams i]s their witness.

(3 R.R. at 144); see Tex. R. Evid. 609.





          [12] At
trial, Johnson objected that the evidence was “duplicitous,” in that “Mr. Cox
who is allegedly referred to on these tapes has already testified, been
cross-examined.”  (3 R.R. at 160.)  We assume without deciding that, that
objection preserves Johnson’s cumulativeness complaint.